***FILED***

4:49 pm, Mar 30, 2021

HDM:RCH/FJN
F. #2016R01214

U.S. DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

GYANENDRA ASRE,
  also known as "Gyanendra Kumar," and
HANAN OFER,

Defendants.

- - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. **1:21-cr-00174(DG)(RER)**
(T. 18, U.S.C., §§ 1960, 982(a)(1),
 982(b)(1), 2 and 3551 et seq.; T. 21,
 U.S.C., § 853(p); T. 31, U.S.C., §§ 5318,
 5322(a) and 5322(b))

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

1.  The defendants GYANENDRA ASRE, also known as "Gyanendra Kumar," and HANAN OFER devised a scheme to bring lucrative and high-risk, international financial business lines (the "High-Risk Business Lines") to small, unsophisticated financial institutions using their money services businesses New York State Employees Federal Credit Union – Credit Union Service Organization LLC ("NYSEFCU-CUSO") and DDH Group LLC ("DDH Group"). ASRE and OFER represented to these unsophisticated financial institutions that, because of their experience and training, they understood the risks associated with the High-Risk Business Lines and would conduct appropriate anti-money laundering ("AML") oversight. Based on ASRE and OFER's representations, the New York State Employees Federal Credit Union ("NYSEFCU"), a small financial institution

with a volunteer board that primarily served New York state public employees, allowed ASRE and OFER to operate the High-Risk Business Lines and conduct transactions through the NYSEFCU. ASRE and OFER then caused the transfer of hundreds of millions of dollars from high-risk foreign jurisdictions through the NYSEFCU, NYSEFCU-CUSO and DDH Group while ASRE willfully failed to implement and maintain AML programs or file reports required by law.

2.  As part of a pattern of illegal activity involving more than $100,000 in twelve months, the defendant GYANENDRA ASRE willfully failed to (1) implement and maintain an AML program as required by law at NYSEFCU; (2) develop, implement and maintain an effective AML program as required by law at NYSEFCU-CUSO; and (3) file with the U.S. Department of the Treasury reports of suspicious transactions.

3.  The defendants GYANENDRA ASRE and HANAN OFER knowingly owned and managed DDH Group, a money transmitting business and money services business that affected interstate and foreign commerce that was not licensed or registered as required by law and involved the transportation and transmission of funds that were known to the defendants to have been derived from a criminal offense or were intended to be used to promote and support unlawful activity.

*Legal Requirements*

4.  The Bank Secrecy Act ("BSA"), codified at Title 31, United States Code, Sections 5311 through 5332, and the regulations promulgated thereunder were a set of laws and regulations enacted by Congress to address an increase in money laundering

through financial institutions. To guard against money laundering, the BSA required domestic financial institutions to establish AML programs, including, at a minimum: the development of internal policies, procedures and controls; the designation of a compliance officer; an ongoing training program; and an independent audit function to test programs.

5. Under the BSA and its implementing regulations, in order to comply with BSA compliance program requirements, a financial institution that was a credit union was required to establish and maintain an AML program, which was one that was reasonably designed to assure and monitor compliance with the BSA and that, among other things, included, at a minimum: (1) a system of internal controls to assure ongoing compliance; (2) independent testing for compliance to be conducted by credit union personnel or outside parties; (3) designation of an individual responsible for coordinating and monitoring day-to-day compliance; and (4) training for appropriate personnel.

6. Under the BSA and its implementing regulations, in order to comply with BSA compliance program requirements, a financial institution that was a money services business was required to develop, implement and maintain an effective AML program, which was one that was reasonably designed to prevent the money services business from being used to facilitate money laundering and was commensurate with the risks posed by the financial services provided by the money services business that, among other things, at a minimum: (1) incorporated policies, procedures and internal controls reasonably designed to assure compliance with the BSA including verifying customer identification, filing reports, creating and retaining records and responding to law

enforcement requests; (2) designated a person to assure day to day compliance with the AML program and the BSA, whose responsibilities included assuring that (i) the money services business properly filed reports, and created and retained records, in accordance with applicable requirements of the BSA, (ii) the compliance program was updated as necessary to reflect current requirements of the BSA, and related guidance issued by the U.S. Department of the Treasury, and (iii) the money services business provided appropriate training and education; (3) provided education and/or training of appropriate personnel concerning their responsibilities under the program, including training in the detection of suspicious transactions to the extent that the money services business was required to report such transactions under the BSA; and (4) provided for independent review to monitor and maintain an adequate program.

7. The BSA required financial institutions, particularly credit unions and money services businesses, to file a report of each deposit, withdrawal, exchange of currency or other payment or transfer by, through or to such financial institution that involved a transaction in currency of more than $10,000 to file a Currency Transaction Report ("CTR") with the Financial Crimes Enforcement Network of the U.S. Department of the Treasury ("FinCEN").

8. The BSA required financial institutions and their directors, officers, employees and agents to report suspicious transactions through the filing of Suspicious Activity Reports ("SARs") with FinCEN. Financial institutions were required to report transactions or patterns of transactions over certain dollar amounts that the financial

institution knew, suspected or had reason to suspect, among other things, involved funds derived from illegal activity and were intended or conducted to hide funds derived from illegal activity, were designed to evade any requirements of the BSA or its regulations and served no business or apparent lawful purpose.

9. Title 18, United States Code, Section 1960 made it a crime to operate an unlicensed money transmitting business. Section 1960(b)(2) defined the term "money transmitting" to include "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier."

10. Under Title 18, United States Code, Section 1960, it was a felony to conduct a "money transmitting business" if, among other things, the business was not registered as a money transmitting business (1) in a State where such operation was punishable as a misdemeanor or felony under State law; and (2) with the Secretary of the Treasury as required under Title 31, United States Code, Section 5330 or regulations prescribed thereunder. Pursuant to such regulations, a money transmitting business fulfilled its registration requirements with the Secretary of the Treasury by registering with FinCEN.

*Relevant Entities*

11. The NYSEFCU was a federal credit union regulated by the National Credit Union Administration. The NYSEFCU was a domestic financial institution, and more specifically, a "bank," as that term is defined under the BSA and its implementing regulations, specifically Title 31, Code of Federal Regulations, Section 1010.100(d). The

5

NYSEFCU was also a "financial institution," as that term is defined under the BSA and its implementing regulations, specifically Title 31, Code of Federal Regulations, Section 1010.100(t). The NYSEFCU maintained an account (the "Federal Reserve Account") with the Federal Reserve Bank of New York ("Federal Reserve").

12. The NYSEFCU-CUSO was a limited liability company affiliated with the NYSEFCU. The NYSEFCU-CUSO was a "money services business," as that term is defined under the BSA and its implementing regulations, specifically Title 31, Code of Federal Regulations, Section 1010.100(ff), and was registered as a money services business with FinCEN.

13. DDH Group was a limited liability company affiliated with the NYSEFCU. DDH Group was a money services business, specifically a "money transmitting business," as defined under Title 18, United States Code, Section 1960, and was not registered as a money transmitting business with FinCEN and with the New York State Department of Financial Services.

*The Defendant Gyanendra Asre*

14. From approximately 2001 to 2010, the defendant GYANENDRA ASRE was employed as a Senior Vice President at a domestic financial institution, the identity of which is known to the Grand Jury (the "Domestic Bank"). During this time period, ASRE received annual training on AML compliance and procedures from the Domestic Bank and from the Association of Certified Anti-Money Laundering Specialists ("ACAMS").

6

15. After his employment at the Domestic Bank ended, the defendant GYANENDRA ASRE continued to receive training in AML procedures and compliance with the BSA, including at instructional courses in 2014.

16. From approximately 2015 to 2016, the defendant GYANENDRA ASRE was also certified as a Certified Anti-Money Laundering Specialist with ACAMS and as a Certified Financial Crime Specialist with the Association of Certified Financial Crime Specialists.

17. From approximately November 2014 to April 2016, the defendant GYANENDRA ASRE was a member of the Supervisory Committee of the NYSEFCU, with compliance responsibilities. From approximately March 2015 to June 2016, ASRE was the Compliance Officer of the NYSEFCU. From approximately November 2014 to June 2016, ASRE owned twenty-five percent of the NYSEFCU-CUSO and was its Compliance Officer. In addition, ASRE owned fifty percent of DDH Group. ASRE was DDH Group's Chief Executive Officer and Managing Partner.

*The Defendant Hanan Ofer*

18. From approximately 1999 to December 2010, the defendant HANAN OFER was employed as a manager of logistics at a domestic financial institution, the identity of which is known to the Grand Jury, which was acquired by the Domestic Bank in approximately 1999. OFER continued as manager of logistics at the Domestic Bank, which included responsibility for managing the logistics of the Domestic Bank's banknote business.

OFER received training in AML procedures and compliance with the BSA while employed at the Domestic Bank.

19. After his employment at the Domestic Bank ended in approximately December 2010, the defendant HANAN OFER continued to receive training in AML procedures and compliance with the BSA, including at instructional courses in 2014.

20. From approximately November 2014 to June 2016, the defendant HANAN OFER owned twenty-five percent of the NYSEFCU-CUSO. OFER owned fifty percent of DDH Group and was DDH Group's President.

*New Business Lines Established at NYSEFCU*

21. From approximately November 2014 to June 2016, pursuant to an agreement with a financial institution in Mexico, the identity of which is known to the Grand Jury ("Mexican Bank 1"), the NYSEFCU-CUSO received over $100 million in bulk cash deposits of U.S. currency from Mexican Bank 1 into the Federal Reserve Account and then wired those funds to Mexican Bank 1's accounts at a U.S. financial institution.

22. From approximately September 2015 to June 2016, DDH Group, pursuant to an agreement with a financial institution in Mexico, the identity of which is known to the Grand Jury ("Mexican Bank 2"), cleared more than $110 million in checks through the Federal Reserve Account that were drawn on bank accounts at U.S. financial institutions but deposited at Mexican Bank 2's branches in Mexico. At defendant GYANENDRA ASRE's direction, after these checks were credited to the Federal Reserve Account, the NYSEFCU transferred the funds to DDH Group's NYSEFCU account and then

8

wired funds from the DDH Group NYSEFCU account to Mexican Bank 2's account at a U.S. financial institution.

23. From approximately May 2015 to May 2016, the NYSEFCU received more than $790 million in bulk cash deposits of U.S. currency from the U.S. branches of a U.S. money transmitter, the identity of which is known to the Grand Jury ("Money Transmitter 1"), into the Federal Reserve Account and then wired those funds to Money Transmitter 1's account at another U.S. financial institution.

24. From approximately October 2015 to June 2016, the NYSEFCU-CUSO, pursuant to an agreement with a U.S. money transmitter, the identity of which is known to the Grand Jury ("Money Transmitter 2"), received more than $224 million in bulk cash deposits of U.S. currency from Money Transmitter 2's U.S. and foreign branches into the Federal Reserve Account and then wired those funds to Money Transmitter 2's account at another U.S. financial institution.

25. NYSEFCU, NYSEFCU-CUSO and DDH Group conducted high risk financial transactions through the Federal Reserve Account related to Mexican Bank 1, Mexican Bank 2, Money Transmitter 1 and Money Transmitter 2 including, but not limited to, transferring large volumes of cash from jurisdictions that present a high-risk for money laundering and processing transactions consisting of sequentially-numbered checks from the same account negotiated at the same branch of Mexican Bank 2 to the same payee in the same amount close in time.

26. For example, from approximately November 2015 to May 2016, NYSEFCU and DDH Group processed at least 50 checks cashed at Mexican Bank 2, drawn on the account of Individual 1, whose identity is known to the Grand Jury, and made payable to Individual 1 totaling over $340,000, with multiple sequential checks cashed on the same day in round dollar amounts. From approximately February 2016 to June 2016, NYSEFCU and DDH Group processed at least 55 checks cashed at Mexican Bank 2, drawn on the account of Individual 2, whose identity is known to the Grand Jury, and made payable to Mexican Bank 2 totaling over $325,000, with multiple sequential checks cashed on the same day in round dollar amounts. From approximately February 2016 to June 2016, NYSEFCU and DDH Group processed at least 30 checks cashed at Mexican Bank 2, drawn on the account of Individual 3, whose identity is known to the Grand Jury, and made payable to Mexican Bank 2 totaling over $270,000, with multiple sequential checks cashed on the same day in round dollar amounts. From approximately October 2015 to June 2016, NYSEFCU and DDH Group processed at least 100 checks cashed at Mexican Bank 2, drawn on the account of Company 1, the identity of which is known to the Grand Jury, and made payable to Company 2, the identity of which is known to the Grand Jury, totaling over $900,000, with multiple sequential checks cashed on the same day in round dollar amounts. From approximately October 2015 to May 2016, NYSEFCU and DDH Group processed at least 40 checks cashed at Mexican Bank 2, drawn on the account of Company 3, the identity of which is known to the Grand Jury, and made payable to Company 4, the identity of which is known

to the Grand Jury, totaling over $200,000, with multiple sequential checks cashed on the same day in round dollar amounts.

27. The defendant GYANENDRA ASRE willfully caused the NYSEFCU and NYSEFCU-CUSO to have AML programs that were not commensurate with the risks associated with the financial services provided to Mexican Bank 1, Mexican Bank 2, Money Transmitter 1 and Money Transmitter 2, despite having training and experience in the requirements of AML programs. At the NYSEFCU, ASRE willfully failed to implement and maintain an AML program that included sufficient internal controls, training for personnel, risk-based procedures for customer due diligence, and ongoing transaction monitoring required to detect, identify and report suspicious transactions. At the NYSEFCU-CUSO, ASRE willfully failed to develop, implement and maintain an effective AML program that was reasonably designed to prevent the NYSEFCU-CUSO from being used to facilitate money laundering. As an example, during the relevant time period, ASRE willfully failed to train employees at the NYSEFCU and NYSEFCU-CUSO on how to comply with the BSA and how to accurately complete and submit CTRs and SARs.

28. From approximately November 2014 to June 2016, the defendant GYANENDRA ASRE willfully failed to file SARs on behalf of the NYSEFCU, NYSEFCU-CUSO and DDH Group related to its financial transactions with Mexican Bank 1, Mexican Bank 2, Money Transmitter 1 and Money Transmitter 2. Despite NYSEFCU transferring more than $1 billion in U.S. currency and checks through the Federal Reserve Account during this time period, ASRE did not file a single SAR regarding this activity.

## COUNT ONE
(Failure to Maintain an Anti-Money Laundering Program – NYSEFCU)

29. The allegations contained in paragraphs one through 28 are realleged and incorporated as if fully set forth in this paragraph.

30. In or about and between November 2014 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GYANENDRA ASRE, also known as "Gyanendra Kumar," together with others, did willfully fail to establish, develop, implement and maintain an AML program at the NYSEFCU as required by law, to wit: ASRE, among other things, failed to establish, develop, implement and maintain an AML program at the NYSEFCU reasonably designed to assure and monitor compliance with the requirements of the BSA; failed to develop internal policies, procedures and controls at the NYSEFCU reasonably designed to assure and monitor compliance with the BSA; failed to designate an appropriate person to coordinate and monitor day-to-day compliance; failed to provide training for appropriate personnel; and failed to monitor, investigate, detect and report suspicious transactions by, through or to the NYSEFCU, as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, contrary to Title 31, United States Code, Sections 5318(h), 5322(a) and 5322(b), and regulations issued thereunder, to wit: Title 31, Code of Federal Regulations, Section 1020.210 and Title 12, Code of Federal Regulations, Section 748.2.

(Title 31, United States Code, Sections 5318, 5322(a) and 5322(b); Title 18, United States Code, Sections 2 and 3551 et seq.)

12

## COUNT TWO
(Failure to Maintain an Effective Anti-Money Laundering Program – NYSEFCU-CUSO)

31. The allegations contained in paragraphs one through 28 are realleged and incorporated as if fully set forth in this paragraph.

32. In or about and between November 2014 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GYANENDRA ASRE, also known as "Gyanendra Kumar," together with others, did willfully fail to establish, develop, implement and maintain an effective AML program at the NYSEFCU-CUSO as required by law, to wit: ASRE, among other things, failed to establish, develop, implement and maintain an effective AML program at the NYSEFCU-CUSO that was commensurate with the risks posed by the location and size of, and the nature and volume of the financial services provided by the NYSEFCU-CUSO; failed to develop internal policies, procedures and controls at the NYSEFCU-CUSO reasonably designed to assure compliance with the BSA, including requirements for filing reports; failed to designate an appropriate person to assure day-to-day compliance with the NYSEFCU-CUSO AML program and the BSA, including assuring the NYSEFCU-CUSO properly filed reports; and failed to monitor, investigate detect and report suspicious transactions by, through or to the NYSEFCU-CUSO, as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, contrary to Title 31, United States Code, Sections

5318(h), 5322(a) and 5322(b), and regulations issued thereunder, to wit: Title 31, Code of Federal Regulations, Section 1022.210.

(Title 31, United States Code, Sections 5318, 5322(a) and 5322(b); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNTS THREE THOUGH SEVEN
(Failure to File Reports of Suspicious Transactions)

33. The allegations contained in paragraphs one through 28 are realleged and incorporated as if fully set forth in this paragraph.

34. On or about the dates identified below, within the Eastern District of New York and elsewhere, the defendant GYANENDRA ASRE, also known as "Gyanendra Kumar," together with others, did willfully fail to file with the U.S. Department of the Treasury reports of suspicious transactions relevant to possible violations of law and regulation on behalf of the NYSEFCU and DDH Group, as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, contrary to Title 31, United States Code, Sections 5318(g), 5322(a) and 5322(b), and regulations issued thereunder, to wit: Title 31, Code of Federal Regulations, Sections 1020.320 and 1022.320 and Title 12, Code of Federal Regulations, Section 748.1, as follows:

| Count | Approximate Date | Amount | Payor | Payee |
|---|---|---|---|---|
| 3 | 4/1/2016 | $12,000 (2 checks) | Individual 1 | Individual 1 |
| 4 | 4/1/2016 | $25,000 (3 checks) | Individual 2 | Mexican Bank 2 |
| 5 | 4/22/2016 | $20,000 (2 checks) | Individual 3 | Mexican Bank 2 |
| 6 | 5/3/2016 | $40,000 (5 checks) | Company 1 | Company 2 |
| 7 | 5/6/2016 | $30,000 (6 checks) | Company 3 | Company 4 |

(Title 31, United States Code, Sections 5318, 5322(a) and 5322(b); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT EIGHT
(Operation of an Unlicensed Money Transmitting Business)

35. The allegations contained in paragraphs one through 28 are realleged and incorporated as if fully set forth in this paragraph.

36. In or about and between September 2015 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants GYANENDRA ASRE, also known as "Gyanendra Kumar," and HANAN OFER, together with others, did knowingly conduct, control, manage, supervise, direct and own all and part of a money services business, specifically a money transmitting business, which affected interstate and foreign commerce, to wit: DDH Group, which (1) operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendants knew that the operation was required to be licensed or that the operation was so punishable; (2) failed to

comply with the money transmitting business registration requirements set forth in Title 18, United States Code, Section 1960 and Title 31, United States Code, Section 5330, and the regulations prescribed thereunder, to wit: Title 31, Code of Federal Regulations, Sections 1010.100(ff)(5) and 1022.380(a)(1); and (3) otherwise involved the transportation and transmission of funds that were known to the defendants to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity.

(Title 18, United States Code, Sections 1960 and 2; Title 18, United States Code, Sections 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNT EIGHT

37. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Eight, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense, to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

38. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

    (Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

*Stella Alcide*
FOREPERSON

*[signature]*
MARK J. LESKO
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

*[signature]*
DEBORAH L. CONNOR
CHIEF, MONEY LAUNDERING AND ASSET RECOVERY SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F.#: 2016R01214

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

GYANENDRA ASRE, also known as "Gyanendra Kumar," and HANAN OFER,

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 1960, 982(a)(1), 982(b)(1), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 31, U.S.C., §§ 5318, 5322(a) and 5322(b))

*A true bill.*

_____ Stella Alcide _____
Foreperson

Filed in open court this _____ day,

of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____

Ryan C. Harris and Francisco J. Navarro, Assistant U.S. Attorneys (718) 254-7000

18